MANUEL CIVIDANES ALONSO, demandante y apelado, *v.* MARCELO OBEN y JESÚS VÁZQUEZ, demandados y apelantes, y LUCE & Co., S. EN C., interventora y apelante.

No. 3450.—*Visto:* Abril 14, 1925. *Resuelto:* Diciembre 23, 1925.

1. INJUNCTION—MATERIAS SUJETAS A PROTECCIÓN Y REMEDIO—BIENES, TRASPASOS Y GRAVÁMENES—INJUNCTION PARA RECOBRAR LA POSESIÓN—SUFICIENCIA DE LA DEMANDA—DEFECTOS SUBSANADOS POR LA PRUEBA. — Atendida la demanda de *injunction* en el caso de autos, *se resolvió:* que si bien las omisiones alegadas para sostener que aquélla no aduce hechos suficientes constitutivos de causa de acción, dentro de las circunstancias—habiéndose levantado la cuestión por primera vez en el alegato presentado a la corte inferior después de

celebrado el juicio sobre los méritos—los defectos quedaron subsanados por la prueba. (*Serrano* v. *Sucn. Santos*, 24: 175, seguido.)

2. INJUNCTION—MATERIAS SUJETAS A PROTECCIÓN Y REMEDIO—BIENES, TRASPASOS Y GRAVÁMENES—INJUNCTION PARA RECOBRAR LA POSESIÓN—ALEGACIONES—DEMANDA DE INTERVENCIÓN EQUIVALENTE A UNA CONTESTACIÓN.—Cuando en acción de *injunction* para recobrar la posesión los interventores en su demanda asumen la responsabilidad por los actos admitidos por ellos como ejecutados de acuerdo con sus instrucciones por los demandados, y la demanda de intervención parece expresar en sustancia y de hecho una defensa a la causa de acción del demandante, dicha demanda de intervención es en efecto una contestación a la demanda de la parte actora.

3. INJUNCTION—MATERIAS SUJETAS A PROTECCIÓN Y REMEDIO—BIENES, TRASPASOS Y GRAVÁMENES—INJUNCTION PARA RECOBRAR LA POSESIÓN—PRECEPTOS ESTATUTORIOS—OBJETO DEL ESTATUTO.—El espíritu y objeto de nuestro estatuto es desalentar toda conducta tendente a provocar una violación de la paz, para dar a las partes en posesión su día ante la corte, obligando a los que no están en posesión a acudir a las cortes para establecer sus derechos.

4. INJUNCTION—MATERIAS SUJETAS A PROTECCIÓN Y REMEDIO—BIENES, TRASPASOS Y GRAVÁMENES—INJUNCTION PARA RECOBRAR LA POSESIÓN—DEFENSAS—POSESIÓN CIVIL ANTERIOR Y COEXISTENTE.—Una posesión civil anterior y coexistente, o un derecho posesorio en ley o equidad, no es ninguna defensa contra un procedimiento para recobrar la posesión material una vez perdida ésta como consecuencia de procedimientos violentos o clandestinos empleados por un demandado.

5. APELACIÓN Y ERROR—SEÑALAMIENTO DE ERRORES—SEÑALAMIENTO SIN ARGUMENTACIÓN.—Cualquiera que sea el mérito de las contenciones envueltas en errores que sólo se enuncian y no se discuten en el alegato, no requieren seria consideración.

SENTENCIA de *G. Castejón*, J. (Guayama), declarando con lugar la demanda, con costas. *Confirmada.*

*J. Tous Soto* y *R. Pérez Marchand*, abogados de los apelantes; *L. Muñoz Morales*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Los demandados e interventores apelan de una sentencia dictada contra ellos y cuyos fundamentos son los siguientes:

"El peticionario en este caso que lo es el Sr. Manuel Cividanes en su carácter de administrador judicial de la herencia de doña Rufina Molinari, ha deducido de acuerdo con la Ley 43 de 1913, el presente recurso especial de *injunction* para recobrar la posesión de cierta propiedad en la cual ha sido perturbado por los actos de los demandados Marcelo Oben y Jesús Vázquez, administrador de campo y mayordomo respectivamente de la Central Machete.

"Tales demandados alegaron haber actuado por orden de su

principal Luce and Company, S. en C., y ésta a su vez radicó una demanda de intervención oponiéndose a las pretensiones del peticionario.

"Sirven de base a la petición de *injunction* en sustancia los siguientes hechos: .

"Que el peticionario es el administrador de los bienes pertenecientes a la herencia de doña Rufina Molinari, entre los cuales está a su cargo y bajo su custodia una factoría de azúcar enclavada en terrenos radicados en el barrio de Jobos de la jurisdicción de Guayama.

"Que desde el año de 1916 fecha en que tomó posesión de su cargo como tal administrador judicial, se encuentra en posesión no interrumpida de dicha factoría de la hacienda Merced, integrada aquélla por maquinarias, edificios y demás instalaciones dentro del radio de dicha factoría.

"Que en los últimos días del mes de Septiembre de 1923 los demandados Oben y Vázquez ordenaron e instalaron respectivamente dentro del radio de la citada factoría seis casas de madera del país, techadas de zinc, destinadas a viviendas de peones, proponiéndose los demandados continuar haciendo nuevas construcciones en el propio lugar.

"Que actuando de este modo los demandados han despojado al demandante de la posesión y tenencia de dicha factoría y que el peticionario en el carácter que ostenta ha requerido a los demandados para que cesen en la perturbación, habiéndose éstos negado a ello.

"La demanda de intervención a nombre de Luce and Co., S. en C., alega los siguientes hechos en sustancia:

"Que Luce and Co., S. en C., son dueños de la Hacienda Merced y se encuentran en la posesión material y civil de la misma actualmente y desde que la adquirieron de la sociedad A. Hartmann y Compañía en 25 de junio de 1920.

"Que en dicha Hacienda Merced se encuentran enclavados diferentes edificios, almacenes y dependencias ubicados en una parcela de una extensión aproximada de ocho cuerdas, siendo dichos edificios propiedad de la sucesión de doña Rufina Molinari pero perteneciendo el suelo en que están los edificios como parte de la Hacienda Merced a la sociedad Luce and Company, hallándose ésta en la posesión de todo el terreno que rodea dichos edificios, almacenes y dependencias.

"Que la corporación Central Machete no es dueña ni poseedora de la Hacienda Merced, habiendo sido · ordenada la instalación de dichas casas por la interventora a sus empleados Oben y Vázquez.

"Que la sucesión Molinari no ha estado en ningún tiempo en la posesión de la Hacienda Merced ni parte de ella, ni dentro del año anterior a la interposición de esta acción y sí solamente de los edificios antes reseñados pero no de los terrenos inmediatos o adyacentes a tales edificaciones que han estado en posesión de la interventora desde que fueron adquiridos.

"Se ha presentado por las partes en este caso prueba documental con respecto al título, la cual admitimos y consideramos ahora únicamente a los efectos de determinar el hecho de la posesión, ya que en estos procedimientos es improcedente considerar cuestiones de título y propiedad si bien éste puede servir para aclarar aquélla. *Ortiz* v. *Silva et al.*, 28 D.P.R. 386. *Alfaro* v. *Alonso*, 27 D.P.R. 56.

"Existe además prueba testifical que consideraremos oportunamente.

"La interventora ha levantado en su alegato como cuestiones legales:

"Que la petición es insuficiente por no describir la porción de terreno cuya posesión se reclama y a más que la demanda de intervención no ha sido contestada.

"En cuanto a la primera cuestión diremos que si bien en la demanda se habla de un radio de terreno, éste ha quedado suficientemente identificado por la prueba, quedando subsanado por ésta cualquier error que pudiera haber existido. *Serrano* v. *Sucesión Santos*, 24 D.P.R. 179.

"En lo que respecta a la falta de contestación nos parece que dada la forma en que han sido planteadas las cuestiones en este caso, la demanda de intervención constituye una verdadera sustitución de partes demandadas, ya que los demandados contestaron haber actuado a nombre de la *interventora* y ésta al comparecer no hace otra cosa que oponerse a lo solicitado por el actor, siendo en puridad de verdad una verdadera demanda de oposición a las pretensiones del demandante.

"La cuestión queda pues reducida a determinar a quién corresponde la posesión material de ciertos terrenos adyacentes a la factoría antes reseñada.

"La prueba testifical demuestra que la hacienda Merced era una finca dentro de la cual existía una factoría dedicada a la fabricación de azúcar.

"Que más tarde a virtud de transacciones los terrenos pasaron a la propiedad de ciertas personas y la factoría a otras distintas.

"Que alrededor de ésta existe una porción de terreno cercado y dentro de él están instalados un tanque de concreto usado como se-

cadora de azúcar, una grúa para levantar cañas, un molino de viento elevador de agua y tres casas, perteneciendo todo esto, en unión de dos de las casas, a la factoría, o sea, a la Sucesión de Molinari, y la otra casa a la interventora Luce and Company, formando dicho terreno la plaza o sitio de operaciones de la ameritada factoría.

"Que sobre este lugar, o sea, en la misma plaza de la factoría se han levantado las seis casas que han dado origen al presente pleito.

"Que Cividanes tiene allí dos hombres encargados de la factoría y Luce and Company en su citada casa también tiene otra persona.

"Luce and Company por medio de su prueba y para sostener la posesión material en que se encuentra sostiene que ha reparado las cercas que rodean tal perímetro de terreno y ha pastado ganado de su propiedad en aquel lugar desde que adquirió la finca en el año 1920.

"Cividanes sostiene con su prueba que el citado predio de terreno pertenece y forma parte de la factoría que ha poseído desde que entró en el ejercicio de su cargo y que el mismo es necesario para llevar a cabo las funciones de la industria azucarera, si bien es cierto que allí no se muele desde hace algunos años.

"La inspección ocular que hiciéramos con el consentimiento de ambas partes demuestra que frente a la factoría existe un perímetro de terreno y en el límite de éste están instaladas las dos casas ocupadas por los representantes de Cividanes; a la derecha la casa de Luce and Company y que dentro del solar comprendido entre la factoría y las dos citadas casas de la Sucesión Molinari están enclavadas las casas de la interventora, siendo cierto que la plaza de la factoría está ocupada en parte por dichas construcciones.

"La prueba en cuanto al hecho de la posesión, como puede verse, resulta contradictoria en extremo, pero si la Sucesión Molinari ha estado siempre en posesión de la factoría, hecho que no ha sido negado, y el terreno cercado alrededor de aquélla es un adyacente y forma parte integrante de la misma por ser necesario para cumplir los fines de la industria que explota, no es difícil llegar a la conclusión de que la posesión de tal terreno ha estado siempre en poder y posesión de la sucesión Molinari sin que cualquier acto de mera tolerancia de su parte en cuanto a permitir allí ganado de la interventora haya podido hacerle perder su derecho de posesión.

"Luce and Company alega, además, su derecho a la posesión a virtud de ser dueña del terreno, pero sabido es que tal derecho no puede ser discutido dentro de un interdicto como el establecido en el presente caso. Padró contra Ríos 1 S. del T. S. 557.

"Manresa en sus comentarios al Código Civil, tomo 4, pág. 211,

al referirse a las personas contra las cuales son procedentes los interdictos de retener o recobrar, se expresa en la siguiente forma:

" 'Por regla general, pueden establecerse contra toda persona que realice actos de perturbación o despojo, aunque sea el mismo dueño, y contra sus herederos, si bien respecto a éstos ha de tenerse presente el artículo 442.' "

A moción de los interventores, el juez sentenciador subsiguientemente emitió las siguientes conclusiones adicionales:

" (*a*) En cuanto al terreno ocupado por la interventora con sus construcciones que si bien las mismas no impiden totalmente el tráfico por la plaza de la central, menoscaban la capacidad de ésta en gran parte, debiendo tenerse en cuenta que la plaza la ocupa también un tanque de concreto dedicado a secadora y una grúa para el levantamiento de cañas.

" (*b*) En cuanto al estado de la factoría en su parte exterior está algo deteriorada no pudiendo determinarse su estado interior por no haberlo inspeccionado y a más por ser imposible a la corte aunque lo hubiera visto determinar el estado de las maquinarias que requerirían el informe de peritos o expertos en la materia. Estando probado que la misma no funciona hace ocho o nueve años.

" (*c*) La corte estima probado que mayordomos de Cividanes y no éste solicitaron de mayordomos de Luce & Co., S. en S., permiso para pastar ganado de Cividanes, si bien éste declara que el ganado de la interventora pastaba allí por mera tolerancia suya y haberse opuesto a ello dirigiéndose a la interventora por medio del Sr. Oben y a más por haber prohibido el uso del molino para levantar agua.

" (*d*) La corte estima probado que la parcela en que está enclavada la factoría está limitada por tres lados con terrenos sembrados de caña. En cuanto a la cerca la prueba demuestra que la misma data en aquel sitio desde hace mucho tiempo (20 ó 25 años) y que Luce & Co., S. en C., la ha reparado tres veces durante los cuatro años que lleva de posesión.

"Que uno de los lados aparece sin cerca o sea aquel en que está la casa de Luce & Co., S. en C.

"Los demás hechos que estima probados la corte constan de la opinión emitida en este caso, así como el resultado de la inspección ocular que no pudo ser lo amplio que se deseara debido al mal tiempo que reinó durante la práctica de la misma.

"No obstante se hace constar la inspección ocular por medio de la correspondiente acta."

El acta de inspección ocular verificada por el juez de distrito al examinar el sitio también se consigna separadamente como sigue:

"Acta Sobre Inspección Ocular.—Hoy día doce de mayo de 1924, a petición de la parte demandante secundada por la interventora se trasladó el Juez que suscribe en unión del secretario de la corte y de los abogados de las partes al barrio Jobos de la municipalidad de Guayama con el fin de practicar una inspección ocular en la hacienda Merced de la cuál es administrador judicial el demandante Sr. Manuel Cividanes.

"Llegados al referido sitio se pudo observar un perímetro de terreno como de ocho a nueve cuerdas separadas de plantaciones de caña que lo circundan por una cerca en tres de sus lados.

"Dentro de tal predio aparece enclavada una factoría o establecimiento para elaborar azúcar, bastante deteriorado en su parte exterior.

"Frente a tal factoría o establecimiento existe la plaza y dentro de ella un tanque de concreto dedicado a enfriadero en la fabricación de azúcar y a más una grúa para el levantamiento de cañas.

"Frente a éstos un espacio de terreno sin vegetación debido sin duda al tráfico continuo por aquel lugar.

"Después una hilera de casas destinadas a peones propiedad de la interventora Luce & Co., S. en C., cuyas casas son las que motivan el presente pleito.

"Al fondo de éstas un pequeño callejón y después dos casas de maderas cuyo fondo linda con la cerca del lado Este propiedad del demandante Manuel Cividanes.

"A la derecha, mirando hacia el Oeste y dando frente a la factoría, una casa de Luce & Co., S. en C., que penetra un poco en la plaza, así como dos casas para peones de Luce & Co., S. en C.

"A la izquierda aparecen otras dos casas también para peones de la propiedad de la interventora, cuyas casas son todas objeto del presente pleito.

"Al fondo de la factoría se ven pastos naturales y un molino de viento para alumbrar agua.

"Debido a la inclemencia del tiempo se dió por terminado el acto regresando a Guayama el juez y secretario en unión de los abogados de las partes que estuvieron presentes durante la inspección."

Los señalamientos de error que han sido alegados son los siguientes:

"1. La corte de distrito erró al no estimar que la demanda no aduce hechos bastantes para determinar una causa de acción, y por tanto al no desestimar dicha demanda.

"2. La corte de distrito erró al dictar sentencia contra los demandantes en intervención, no habiéndose contestado dicha demanda por la parte demandante y no pidiéndose en la demanda original remedio alguno contra dichos demandantes en intervención.

"3. La corte de distrito erró al no estimar que existiendo una comunidad de bienes entre la sucesión de Rufina Molinari (demandante) y la demandante en intervención (Luce and Co.) por ser dueños éstos del suelo y usufructuaria aquélla hasta su muerte del suelo y dueña plena de los edificios, cada condueño tiene derecho a ejercer actos de posesión y disfrute de la cosa, siempre que no perjudique al otro condueño, de acuerdo con el artículo 401 del Código Civil.

"4. La corte de distrito erró al no estimar que Luce & Co. y sus antecesores en título estuvieron siempre en la posesión civil y en la material y tenencia física de la parcela en que están sitos los edificios, sujeta esta posesión, sin embargo, al ejercicio por la dueña de éstos de una servidumbre sobre dicha parcela para todos los usos y servicios de la antigua factoría.

"5. La corte de distrito erró al considerar que Luce and Company, S. en C., perturbó la posesión de la Sucesión de Rufina Molinari erigiendo cuatro casas de peones en la parcela ocupada por los edificios propiedad de aquélla erigidos en dicha parcela, toda vez que la factoría azucarera, no está en explotación y que dichas casas no estorbarían el uso de dicha factoría, si estuviera en explotación.

"6. La Corte de distrito cometió error al infringir por su no aplicación el artículo 461 del Código Civil, toda vez que estando demostrada la posesión de los antecesores en título de Luce & Co., en fecha anterior al año de 1916 (en que alega Cividanes el demandante que comenzó su posesión) y la posesión actual de éstos, debe presumirse que han poseído durante todo el tiempo intermedio.

"7. La corte erró al admitir como evidencia un croquis del terreno y edificios en cuestión preparado por el testigo Cividanes, sin tener conocimientos en la materia (folio 21).

"8. La corte erró al no consentir que el testigo Cividanes declarara sobre el estado de los edificios (folio 24).

"9. La corte erró al permitir que el testigo Manuel Cividanes declarara impugnando la declaración de sus propios testigos (folio 44)."

Alegan los apelantes que la demanda no aduce hechos suficientes para constituir una causa de acción:

"A. Porque alega la posesión, no de la parcela de terreno donde está la factoría o Central Merced, sino la posesión de esta factoría.

"B. Porque no alega que se le perturbara en la posesión de la factoría (que es el bien objeto de posesión) sino del radio o terreno adyacente, cuya posesión no se alega.

"C. Porque no se describe tal radio."

[1] La demanda no es un modelo de perfección, pero las omisiones alegadas en tanto existen apenas si pueden considerarse como que constituyen una completa falta en determinar una causa de acción. Si hubiera sido interpuesto una excepción previa y declarada con lugar, el demandante hubiera tenido una oportunidad para hacer enmiendas. Según consta de la opinión emitida por el juez, *supra,* la cuestión fué levantada por primera vez en el alegato presentado en la corte inferior después de celebrarse un juicio sobre los méritos. Dentro de las circunstancias, el juez de distrito claramente tuvo razón al sostener que los defectos quedaron subsanados por la prueba.

[2] La demanda de intervención concluía con la súplica de que se desestimara la demanda. Como indicó el juez sentenciador, los interventores asumieron la responsabilidad completa por los actos admitidos por ellos como ejecutados de acuerdo con sus instrucciones, por los demandados, y según también llamó la atención la corte inferior, la alegación parece expresar en sustancia y de hecho una defensa a la causa de acción del demandante. Por una curiosa coincidencia el alegato en apelación se titula "Brief de los demandados." El abogado no cita ninguna autoridad para sostener el segundo señalamiento de error y será bastante, por tanto, con hacer referencia de paso al caso del *Pueblo* v. *Pérez Irrigation District,* 132 Cal. 289, y al de *Henry* v. *Vineland Irrigation District,* 140 Cal. 376, citados por el apelado.

[3, 4] Los señalamientos tercero, cuarto y quinto de los apelantes se discuten conjuntamente y pueden ser resueltos en igual forma. Del razonamiento del alegato hacemos el siguiente extracto:

"En resumen. Posesión exclusiva de doña Rufina es la que ésta tuvo y tiene ahora su administrador judicial de la factoría, edificios, etc. La posesión del terreno adyacente a dicha factoría, de la plaza no es exclusiva, fué la posesión de todos los condueños, de Doña Rufina usufructuaria y de los nudos propietarios, mientras ella vivió, y muerta ella es la posesión de estos últimos con exclusión de ella, salvo en cuanto al uso de los terrenos adyacentes para las labores de la fábrica. Esta posesión es ni más ni menos que la que el disfrute de una servidumbre impuesta por la voluntad tácita de las partes en la partición de bienes de Don Ignacio Díaz, al conceder la propiedad de la factoría y edificios a Doña Rufina, y la propiedad de los terrenos, sin excepción alguna, a los demás herederos en nuda propiedad y a Doña Rufina en usufructo. En tanto vivió ésta, no pudo surgir problema legal alguno, porque ella estaba en posesión, uso y disfrute de todo: edificios y terrenos. Fallecida la usufructuaria y trasmitidos los terrenos a terceras personas, ha surgido ahora el problema legal, que a nuestro juicio no tiene otra solución que la expuesta. La sucesión de Doña Rufina, dueña de edificios construídos en suelo ajeno, tiene derecho a usar, desde luego, el suelo en que están construídos, tiene derecho a una servidumbre de paso para entrar y salir por los terrenos adyacentes y si la factoría funcionara tendría derecho a ocupar los terrenos necesarios para las operaciones de la molienda, durante ésta, o sea carga y descarga de cañas, movimiento de carros, almacenamiento de bagazo, leña, etc., sin que los dueños del suelo pudieran oponerse a tales actos; pero al propio tiempo los dueños del suelo, que lo han poseído siempre, a través de la usufructuaria, por lo menos, tienen el derecho de usar los terrenos adyacentes a la factoría, de disfrutarlos y poseerlos en tanto su posesión no menoscabe o perturbe las operaciones de la factoría.

"¿Las perturban las casas portátiles erigidas por Luce and Co., S. en C.? De ningún modo, entre otras razones por la elemental razón de que la factoría no muele ha mucho tiempo.

"Por lo expuesto se ve que la corte de distrito no tiene razón al decir que la prueba es contradictoria. No lo es. Cividanes ha ejercitado actos de posesión en el terreno adyacente a la factoría,

cuando allí se molía, utilizando la plaza en las labores de la zafra. Los realiza ahora entrando y saliendo con sus guardas y peones de las casitas que allí tiene, entrando y saliendo del ruinoso edificio de la factoría; y Hartmann & Co. y después Luce and Co., S. en C., realizan también actos de posesión, entrando y saliendo en la casa de su propiedad que está ubicada en la misma plaza, pastando bueyes en dicho sitio, abrevándolos, manteniendo empleados, emplazando casas para peones allí, componiendo las cercas de las piezas de caña contiguas que por tres lados circundan el terreno en cuestión, etc. Ambas posesiones son compatibles y armónicas. La armonía ha querido perturbarla el señor Cividanes tratando de prohibir a los dueños del suelo y poseedores del mismo que realicen actos de posesión que son compatibles con la servidumbre de que goza la dueña de la factoría."

Como ya se ha indicado, la demanda de intervención no contiene ninguna súplica, para un remedio afirmativo, admitiendo en pro del argumento, aunque sin resolver, que por virtud de los hechos alegados, los interventores hubieran tenido derecho a tal remedio en un procedimiento de esta naturaleza.

No estamos, por consiguiente, tratando de los derechos posesorios definitivos de las respectivas partes.

Si bien la demanda de intervención habla en términos generales y sin hacer diferencia alguna entre la posesión natural y la civil, la única cosa envuelta, si no la única cuestión que podía ser levantada aquí, era y es si el demandante estaba en posesión real del terreno en el cual las casas edificadas por los interventores estaban situadas. Si es así, él tiene derecho al inmediato restablecimiento de tal posesión, aparte de cualquier derecho que los interventores puedan tener, de ser alegados en la debida acción para lanzar al administrador de cualquier parte o porción o de la totalidad del terreno, o prohibirle que intervenga con el ejercicio por parte de los interventores de cualquier derecho que puedan tener a participar en tal posesión, o solicitar cualquier otro remedio, bien sea en ley o en equidad.

Mientras no se pruebe de un modo claro que existió error,

si lo hubo, en las anteriores decisiones de esta corte, estamos obligados a resolver de conformidad con las mismas y de acuerdo con la historia del interdicto de recobrar de la Ley romana, que el espíritu y objeto de nuestro estatuto es desalentar ·aquella conducta tendente a provocar una violación de la paz, para dar a las partes en posesión un día ante la corte, obligando a las partes que no están en posesión a acudir a las cortes para establecer sus derechos en vez de tomar la ley por su mano.  Parece ser consecuencia de la precedente proposición que una posesión civil anterior y coexistente, o un derecho posesorio en ley o equidad, no es ninguna defensa contra un procedimiento para recobrar la posesión material una vez que ha sido perdida como consecuencia de procedimientos violentos o clandestinos empleados por un demandado.  Véase también el tomo 6 de Manresa, Comentarios a la Ley de Enjuiciamiento Civil Española, Tercera Edición, Título 20, págs. 142, 149, 152, 153, 155 y 157.

La teoría del abogado del apelante en cuanto a una posesión material por parte del dueño del terreno coexistente, o alternante e intermitente, es interesante y en tanto concierne al hecho de pastar el ganado es más o menos admisible.  La principal dificultad en la aplicación de tal regla se vería que descansa quizás en la imposibilidad práctica de cualquier línea fija de demarcación entre, o una determinación precisa, de los derechos de las respectivas partes sobre tal base inestable y variable.

No existe ninguna muy marcada diferencia entre un dueño de terreno cualquiera y esa considerable porción de la humanidad que ha hecho proverbial que de dársele una pulgada tomarán "una yarda."  El dueño del terreno que empieza por pastar ganado en los terrenos de la factoría, mientras ésta no se encuentra moliendo y da permiso luego a los empleados del dueño de la factoría para ejercitar temporalmente un privilegio semejante, está dispuesto a terminar construyendo en la finca así usada para pastar ga-

nado, estructuras permanentes que impedirán el acto de la molienda al practicarse ésta. Y de no ser prontamente restringido, el dueño de la finca puede, por tanto, decir al dueño o administrador de la factoría, "Ud. está impedido por su conducta, a Ud. no puede permitírsele que continúe callado mientras yo tengo que gastar grandes sumas de dinero en la construcción de edificios en mi propia finca y requerir entonces la supresión o demolición de tales estructuras simplemente porque interrumpen más o menos el funcionamiento de la factoría. *Rabell* v. *Rodríguez,* 24 D.P.R. 561.

Admiten los apelantes, al parecer, que la posesión del dueño de la factoría es exclusiva mientras está funcionando la misma, y citan como prueba fundamental de la conclusión a que llegó la corte inferior el artículo 447 del Código Civil, el cual es como sigue:

"Art. 447.—La posesión como hecho, no puede reconocerse en dos personalidades distintas, fuera de los casos de indivisibilidad. Si surgiere contienda sobre el hecho de la posesión, será preferido el poseedor actual; si resultaren dos poseedores, el más antiguo; si las fechas de las posesiones fueren las mismas, el que presente título; si todas estas condiciones fuesen iguales, se constituirá en depósito o guarda judicial la cosa, mientras se decida sobre su posesión o propiedad por los trámites correspondientes."

Entre las presunciones disputables establecidas expresamente en el artículo 102 de la 'Ley de Evidencia está la siguiente:

"Inciso 31.—Que una vez probada la existencia de una cosa, continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza."

Que la posesión del terreno realmente ocupado en relación con las operaciones de molienda es exclusiva durante tales operaciones, ya se admita o nó ser así, parece ser cosa demasiado clara para discutirse. Por lo general y prácticamente el mismo espacio no puede ser ocupado al propio tiempo por dos objetos sólidos. El ganado no puede ser

puesto en cercados en los cuales ya hay otro ganado. El bagazo producido por una factoría de azúcar no puede ser depositado convenientemente en terreno ya ocupado por viviendas edificadas por el dueño de dicho terreno donde está la factoría.

Los apelantes, si entendemos el razonamiento, no alegan ni podrían razonablemente alegar que los interventores tendrían derecho a erigir estructuras permanentes durante el período que media entre las épocas de molienda en terreno actualmente usado en relación con las operaciones de molienda, pero si están en libertad para construir tales edificaciones simplemente porque la factoría por alguna razón que no se explica ha estado sin trabajar por un año o más, entonces vuelve a hacerse difícil establecer una línea más allá de la cual no deben ellos pasar, o decir que no puedan hacer lo mismo en el período comprendido en las épocas de molienda o, por eso, siempre que la factoría, debido a la escasez accidental de caña, o por cualquier otra razón, pueda creer necesario suspender las operaciones por una semana o diez días, o hasta por la noche.

Por otra parte, si la presunción respecto a la ocupación material del terreno ha de extenderse a tal intervalo, entonces no parecería existir ninguna razón suficiente por la cual no debiera continuar, a falta de alguna prueba de lo que es el curso natural u ordinario de los sucesos en tales circunstancias, por un período de varios años.

No necesitamos investigar sobre cuál pudo haber sido el resultado si los interventores hubieran alegado e introducido prueba para demostrar que la factoría no tiene caña propia que moler, ni contratos de molienda ni ninguna perspectiva de obtener tales contratos en el futuro, o que la factoría no podía ser rehabilitada y puesta en condiciones de funcionar sin tener que reconstruirla prácticamente, o que no sería funcionada beneficiosamente después de tales reparaciones, o que no hay ninguna perspectiva o probabilidad razonable de una venta de la factoría como tal o, en resumen, que di-

cha factoría en realidad no es tal factoría sino un montón de desperdicios.

Hubo cierta prueba tendente a acreditar que si bien la factoría no está en condiciones de trabajar, sin embargo, podría servir para la molienda sustituyéndole varias de sus partes componentes. De todo lo que aparece de los autos la molienda puede continuarse al principio de la próxima estación de molienda.

[5] De las proposiciones enumeradas 6 a la 9, inclusive, en los señalamientos de error, los apelantes se conforman con decir:

"Errores sexto, séptimo, octavo y noveno.—No requieren argumento especial. Entendemos que es suficiente la enunciación de los mismos. Son materia de evidencia."

Cualquiera que sea el mérito que estas contenciones puedan tener, no resulta por sí evidente para nosotros como parece serlo para los apelantes y según han sido presentadas y sometidas en el alegato no requieren seria consideración.

La sentencia apelada *debe ser confirmada*.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.