FRANCISCO BARREIRO GARCÍA, demandante y apelado, v. PORTO RICO RAILWAY, LIGHT AND POWER COMPANY, demandada y apelante.

No. 3321.—*Visto:* Mayo 28, 1925. *Resuelto:* Febrero 19, 1926.

1. APELACIÓN Y ERROR—RÉCORD Y PROCEDIMIENTOS QUE NO ESTÁN EN RÉCORD—CUESTIONES QUE DEBEN APARECER DEL RÉCORD—FUNDAMENTOS DE REVISIÓN PRESENTADOS Y RESERVADOS EN EL TRIBUNAL INFERIOR—EXCEPCIONES TOMADAS—RESOLUCIONES SOBRE EXCLUSIÓN DE PRUEBAS.—Una resolución de una corte inferior excluyendo cierta prueba no puede revisarse en apelación cuando no aparece que se tomara excepción alguna a dicha resolución.

2. APELACIÓN Y ERROR—PRESENTACIÓN Y RESERVAS EN LA CORTE INFERIOR DE LOS FUNDAMENTOS DE REVISIÓN—EXCEPCIONES—NECESIDAD DE QUE SE FUNDAMENTEN—RESOLUCIONES SOBRE EXCLUSIÓN DE PRUEBAS.—Excepciones tomadas a resoluciones sobre exclusión de pruebas, cuando no se aduce razón alguna para ellas, no pueden revisarse en apelación.

3. APELACIÓN Y ERROR—ASIGNACIÓN DE ERRORES—RELACIÓN DE DEPENDENCIA ENTRE EL ERROR Y EL RÉCORD—ERROR QUE CARECE DE BASE EN LOS AUTOS.—No puede sostenerse un alegado error relativo a la exclusión de pruebas en apoyo de una contrademanda, cuando la proposición alegada carece de base sólida en los hechos que constan de los autos de apelación.

4. APELACIÓN Y ERROR—REVISIÓN—ERRORES NO PERJUDICIALES—ERROR QUE NO AFECTA EL RESULTADO DEL PLEITO.—Cuando la única sentencia que pudo dictarse sobre una contrademanda era declararla sin lugar, el error en no dictar tal sentencia—admitiéndose por el demandado-apelante que la evidencia aducida en apoyo de la contrademanda no suministra base para una sentencia de acuerdo con la súplica de la misma—no es perjudicial.

5. SENTENCIA—JUICIOS CONTENCIOSOS—RESOLUCIÓN DE LAS CUESTIONES ENVUELTAS EN EL LITIGIO—CONTRADEMANDA NO CONSIDERADA.—Si bien la negativa a considerar una contrademanda en muchos casos equivaldría a una violación de los principios de práctica en equidad y a una negativa de justicia substancial, sin embargo, no lo es así cuando la posesión natural o un mero derecho en ley o equidad a la posesión, que puede constituir el fundamento de dicha contrademanda, puede convertir el procedimiento original—en caso de *injunction* para recobrar posesión—en una controversia sobre los derechos posesorios últimos de las partes.

SENTENCIA de *M. Rodríguez Serra,* J. (Segundo Distrito, San Juan), declarando con lugar la demanda, con costas. *Confirmada.*

J. H. *Brown* y *Clemente Ruiz Nazario,* abogados de la apelante; H. *Torres Solá,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La demandada, en un procedimiento de injunction para obligarla a restablecer al demandante en la posesión de un

predio de terreno, apela de una sentencia dictada contra ella y alega los siguientes errores:

"1. La corte erró al no admitir evidencia para demostrar las alegaciones de la contrademanda.

"2. La corte erró al no hacer pronunciamiento alguno en cuanto a la moción presentada por el demandante solicitando la eliminación de la contrademanda.

"3. La corte erró al dictar sentencia declarando con lugar la demanda haciendo caso omiso de la contrademanda presentada por la apelante, y sin haber hecho pronunciamiento alguno respecto a su admisión o no admisión."

La contestación contenía negativas generales y específicas de los hechos alegados en la demanda.

La contrademanda alegaba que en marzo de 1913, el demandante segregó y vendió a la demandada un predio de terreno comprometiéndose a la evicción y saneamiento del mismo; que posteriormente el referido vendedor construyó una casa en la parte que no había sido vendida de la finca original; que en octubre de 1923 la demandada procedió a efectuar la mensura del predio adquirido en 1913, tomando como base para tal mensura los puntos o medidas referidos en la escritura; que entonces la demandada llegó al convencimiento de que Barreiro había adicionado un martillo a su casa, parte de cuyo martillo así como una letrina fué construída dentro del referido predio de la demandada; que la demandada requirió al demandante para que procediese a levantar la referida letrina, y a destruir la parte del martillo de la dicha casa que se encontraba construída en terreno de la demandada y que Barreiro se había negado a acceder a dicha petición; que en el mes de noviembre de 1923, la demandada procedió a cercar el predio adquirido en 1913 de acuerdo con la mensura verificada en 1923, y se vió impedido de tirar la línea de alambre de su colindancia Este en toda su extensión, por impedírselo la usurpación e intrusión hecha por el contrademandado, en la extensión ocupada por el referido martillo de la casa, quedando asi-

mismo cercado dentro de los límites del predio de la demandada la letrina construída.

En la súplica se pedía a la corte que dictara sentencia ordenando que se levantara y removiera del predio de la demandada todas las construcciones edificadas en dicho predio por el contrademandado y especialmente el martillo y letrina que se han relacionado, y ordenándole asimismo que se abstenga de impedir por medio alguno que la contrademandada cerque su dicha finca, e impidiéndole que intervenga en forma alguna con el libre uso y posesión de dicha finca por esta contrademandante, ordenando a la vez el lanzamiento de dicho contrademandado; y condenándole al pago de las costas, gastos y honorarios de abogado.

Para sostener la primera proposición que alega el apelante en los señalamientos de error nos cita las páginas 19, 20, 23, 24, 29 y 30 de las notas taquigráficas.

[1, 2] Examinando las páginas 19 y 20 nos encontramos con el interrogatorio de repreguntas hechas al testigo Barreiro, el cual es como sigue:

"(Abogado de la demandada:) ¿Ud. dice que es dueño de una finca?

"Demandante: El ha dicho que está en posesión.

"Hon. Juez: Quiero que tengan idea de la acción que se está ventilando. La corte no va a resolver el título, lo que se trata es de proteger la posesión material. Si no estaba en posesión contradígale, pero si lo estaba lo protegeré.

"Que esa finca que él dice que posee en Río Piedras es parte de mil seiscientos veinte y siete metros. (Demandada:) ¿de 1627 o de 1697? (Testigo:) Lo que me quepa. (Demandada:) El resto de esa finca ¿a quién se la vendió? (Testigo:) Yo vendí cinco metros. . . . .

"Demandante: No es pertinente a quién se la vendió.

"Hon. Juez: Suponiendo que la hubiera vendido; si está en posesión material de esto.

"Demandada: Queremos probar la posesión adversa de la Compañía con el mismo testigo.

"Hon. Juez: No conteste.

"Demandada: Tomo excepción.

"Demandada: ¿Ud. vendió alguna parte de esa finca de 1690 metros?

"Demandante: Me opongo, porque aquí no se está discutiendo ventas.

"Hon. Juez: Sostenida la oposición.

"Demandada: Tomo excepción.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

El título del demandante a lo que quedaba después de la segregación y venta hecha a la demandada en 1913, no fué discutido sino admitido en la contrademanda. Ninguna excepción fué tomada a la resolución a que alude la opinión emitida por el juez sentenciador al comenzar este interrogatorio de repreguntas excluyendo las cuestiones relativas al título, por lo menos en cuanto se trataba del título del demandante. El juez según parece quedó bajo la impresión de que el abogado de la demandada estuvo conforme con el criterio sustentado en cuanto el mismo indicaba algo fuera de esto respecto a los puntos generales sobre los cuales una investigación había de llevarse a cabo.

"La posesión adversa de la compañía" era una contestación muy vaga a la pregunta formulada por el juez en cuanto al efecto de la posesión material a pesar de la venta. No se adujo razón alguna para la excepción tomada a las dos resoluciones que siguieron inmediatamente. Admitiendo en pro del argumento que la demandada tenía derecho a probar las alegaciones esenciales de la contrademanda mediante repreguntas al demandante, sin tomar en cuenta el alcance del interrogatorio directo, sin embargo creemos que el juez sentenciador también tenía derecho a alguna indicación respecto a lo que pensaba el abogado.

Claramente que lo que la corte inferior tenía en cuenta era la cuestión litigiosa que surgía de la demanda y la contestación. La contrademanda al parecer había sido completamente olvidada y en ningún momento durante todo el juicio se le recordó su existencia al juez de la corte inferior.

[3] La declaración del primer testigo de la demandada

comprende las páginas 23 a la 25 de la transcripción y es como sigue:

Que su nombre es E. B. Roberts; que vive en Bayamón y su profesión es ingeniero civil. Que ocupa el cargo de jefe de ingenieros en la Porto Rico Railway, Light & Power Co. Que ha tenido oportunidad de medir y examinar una finca propiedad de la Porto Rico Railway, Light and Power Co. en Río Piedras.

"Demandada: ¿De quién adquirió esa finca la Porto Rico Railway, Light & Power Co.?

"Demandante: Me opongo.

"Juez: Sostenida la oposición.

"Demandada: La Porto Rico Railway, Light and Power Co. ¿está en posesión de esa finca?

"Demandante: Por sugestiva nos oponemos.

"Juez: Sostenida la oposición.

"Demandada: ¿En calidad de qué actúa la Porto Rico Railway, Light and Power Co. en esa finca?

"Testigo: La posee como dueña.

"Demandante: Pedimos que se elimine, no se ha demostrado cuál propiedad.

"Juez: Todavía no sabemos de qué propiedad se trata.

"Que conoce la finca de que se trata en este pleito.

"Demandada al testigo: ¿Ud. sabe si la finca que ha dicho que posee la Porto Rico Railway, Light & Power Company es colindante con esa finca?

"Demandante: Nos oponemos no hay base ninguna.

"Juez: No sabemos de cuál finca se trata, el testigo no ha identificado ninguna.

"Demandada al testigo: Haga el favor de describir esa finca que posee la Porto Rico Railway, Light & Power Company en Río Piedras, y a la que se ha referido. Quisiera refrescarle la memoria al testigo con un plano que se hizo.

"Juez: La cuestión que está en disputa es la cuestión de la posesión de la finca que se describe en la demanda."

"Que conoce la finca del señor Barreiro a que se refiere la demanda; que en ningún tiempo la Porto Rico Railway, Light and Power Co. ha tratado de usurpar esa propiedad del señor Barreiro; que la Porto Rico Railway, Light and

Power Co. no ha interrumpido en vez alguna la posesión que tiene él de esa propiedad. (Abogado de la demandada:) ¿La Porto Rico Railway, Light & Power Co. en alguna ocasión ha hecho algún acto o cometido algún acto tendente a perjudicar la posesión tranquila y pacífica que debe tener el señor Barreiro sobre esa finca? (Testigo:) Nosotros no hemos intervenido con la propiedad de Mr. Barreiro.

"Interrogado el testigo por el Hon. Juez si sabe si la compañía ha dispuesto correr la cerca en ese sitio hacia los terrenos de Mr. Barreiro, contestó: Sí señor, yo dí esa orden. (Abogado de la demandada:) Esa cerca que dice ha sido corrida, ¿ha sido corrida dentro de la propiedad de Mr. Barreiro o dentro de la propiedad de la compañía? (Testigo:) No señor. (Hon. Juez:) ¿Quién estaba en posesión del terreno comprendido en la cerca vieja, en posesión material? (Testigo:) Barreiro tenía la posesión de esa propiedad.

"A preguntas del abogado de la demandada, declaró: Respecto a si sabe si la Porto Rico Railway, Light & Power Co. estaba en posesión real del terreno cubierto por la verja, después de estar movida: Que sabe que tenía el título pero no sabe quién tenía la posesión material; que cree que la Porto Rico Railway, Light and Power Co. ha estado y está en posesión de todas sus fincas, pero que no han perturbado la posesión de las personas que habitan en esa casa. Que han tirado una cerca que pasa frente a la casa pero no perturba a los que habitan la casa.

"Interrogado por el abogado del demandante, declaró: que la cerca esa divide la casa en dos partes; que puede que además de esa casa en ese terreno hubiera algunas siembras. A preguntas del Hon. Juez declara que si había siembras no sabe quién las plantó.

"Interrogado por el abogado del demandante, declaró: que no sabe si la Porto Rico Railway, Light & Power Co. en vez alguna sembrara maíz allí. Que sabe que la Porto Rico Railway, Light & Power Co. está poseyendo allí porque a

él se le entregó un título para marcar los puntos y colin-
dancias de la finca.   Respecto a quién estaba en posesión de
ese terreno cuando fué allí a marcar esos puntos: que lo
único que vió allí fué una casa, un martillo de una casa que
sobresalía; que no recuerda haber visto maíz allí; que puso
unos espeques allí;  que no notó lo que quedaba a un lado y
otro de la cerca cuando trazó la línea.''

Interrogado por el abogado de la demandada si existía
alguna cerca con anterioridad a cuando se puso esa otra
cerca, el testigo contesta: ''No había ninguna al tiempo que
yo tomé esas medidas.''

En las páginas 29 y 30 Sergio Gelpí, abogado y agente
de reclamaciones de la demandada, cierra la prueba testifi-
cal de la defensa como sigue:

''Demandante: Aquí no se ha alegado ninguna transacción u
obligación entre demandante y demandado; esta prueba parece que
tiende a demostrar algún convenio que no se alega en la contestación.
''Juez: Siga declarando.   Que estuvieron hablando sobre la casa
que quedaba en los terrenos de la compañía, según su escritura, a su
manera de ver; se lo explicó a Barreiro y él accedió a lo siguiente:
que la compañía le diera tiempo suficiente para retirar la casa y para
retirar la letrina, una casita que quedaba más adentro del terreno
de la compañía; tuvieron un pequeño entendido en cuanto a la casa,
como había parte dentro de la propiedad, el señor Barreiro le dijo
que eso le sería difícil a él retirarla porque era una casa construída
y por tanto quería que la compañía le volviera a vender el pedazo
donde quedaba la casa; la parcela que tenía la casa de él; que en-
tonces le dijo (el testigo) que tendría que consultar eso con el di-
rector de la compañía y con Mr. Brown, abogado de la compañía
también, para ese particular, pero que mientras tanto le daban dos
meses para que retirara la parte de la casa que había dentro de la
propiedad y la letrina.
''Demandada: ¿Sabe si la compañía Porto Rico Railway, Light
and Power Co. estaba en posesión del terreno?
''Demandante: Creemos que ésta evidencia se refiere a un su-
puesto convenio que no está alegado en la contestación.
''Juez: Sí, eso es cuestión de títulos, no cuestión de posesión.
''Demandada: La Porto Rico Railway, Light and Power Co. ¿es-
taba en posesión de su finca, de la finca esa que trataba de cercar?

"Testigo: Yo personalmente no conozco o conocía el sitio, anteriormente, pero según las manifestaciones que me hizo . . . . .

"Demandante: Me opongo, por ser de referencia.

"Demandada: ¿ Sabe de quién adquirió la finca la Porto Rico Railway, Light & Power Co. ?

"Demandante: Me opongo. No importa de quién la adquiriera.

"Juez: Con lugar la oposición."

En estas dos citas no encontramos ninguna indicación de alguna intención claramente definida por parte del juez sentenciador a excluir evidencia alguna en apoyo de las alegaciones de la contrademanda. Por el contrario, las repetidas objeciones hechas por el abogado del demandante y las sugestiones de la corte al efecto de que la demandada trataba de probar cuestiones no mencionadas en la contestación y relativas a un predio de terreno que no había sido identificado debieron haber sugerido al abogado de la demandada el curso que de haber sido seguido desde el momento de la primera objeción, si no desde que el primer testigo de la demandada fué a declarar, podrían haber obviado toda dificultad.

La escritura de venta en la cual se funda la contrademanda en su totalidad, nunca fué ofrecida como prueba y según ya se ha indicado no se hizo referencia alguna en ningún momento por el abogado de la demandada respecto al hecho de que la contrademanda no había sido eliminada.

El alegato de la apelante explica esta omisión fatal como originada por la inexperiencia y consiguiente confusión y molestias del joven abogado que llevó el caso para la demandada. Que esa es una circunstancia atenuante que no deja de tener la simpatía de cualquiera que pueda recordar lo que un abogado raramente olvida, o sea su primera comparecencia como único encargado y solo representante de un caso en la corte. Las circunstancias atenuantes sin embargo no pueden variar la regla de que las cuestiones que han de alegarse en apelación deben ser sometidas y aprobadas por la corte inferior.

La primera y principal proposición sometida por la apelante no puede ser sostenida debido a que carece de base sólida en los hechos que constan de los autos.

[4] La moción para eliminar la contrademanda se hizo oralmente al principio del juicio. Ambas partes convinieron en que la cuestión quedaría sometida para ser resuelta después de la consideración de la prueba. La omisión ya en declarar sin lugar la moción, o en ordenar que fuera eliminada la contrademanda después de haber sido sometido el caso, no se ha demostrado que haya perjudicado al apelante en algún derecho substancial.

La demandada por supuesto tenía derecho a insistir en una decisión que resolviera de algún modo la contrademanda. Técnicamente la sentencia debe ser revocada a no ser que pueda sostenerse intacta en lo que respecta a la única cuestión litigiosa que en realidad determina, y devuelto el caso para ulteriores procedimientos con el fin de que se dicte resolución sobre la contrademanda. La única otra teoría en la cual el olvido de la corte inferior en resolver el caso en conjunto podía quedar justificado, sería que la demandada había abandonado enteramente las cuestiones litigiosas propuestas en su contrademanda. Ya hemos llegado hasta donde estamos dispuestos a investigar en este sentido, y la procedencia de una revocación en parte y una confirmación en parte parece más bien dudosa.

Sin embargo, el alegato de la apelante admite francamente que la evidencia aducida al juicio no suministra base alguna para una sentencia de acuerdo con la súplica de la contrademanda. La única sentencia que la corte de distrito pudo haber dictado sobre los méritos de las alegaciones de la contrademanda hubiera sido declarar sin lugar la acción del contrademandante. El error en no dictar tal sentencia, el cual, por la misma admisión de la apelante, no podía ser impugnado como contrario a la prueba y cuya sentencia de ser confirmada podría o nó ser alegada en una acción sub-

siguiente como *cosa juzgada,* apenas si puede considerarse como perjudicial.

[5] El cuarto señalamiento de la apelante se caracteriza en el alegato y discute brevemente como secuela de los precedentes. En tanto no ha sido resuelto con lo ya expresado, no requiere seria consideración.

Si estuviéramos preparados para decir que una resolución que sostiene la moción del demandante debió haber sido revocada, entonces tal vez estaríamos inclinados a dar a la apelante el beneficio de cualquier duda que pueda existir en cuanto a la solidez de cualquiera de las anteriores conclusiones y ordenar un nuevo juicio.

Pero los abogados admiten que la cuestión que surge de la radicación de la contrademanda en este caso es tanto nueva como complicada. El alegato termina con el ofrecimiento de presentar un memorándum. Aunque la vista fué pospuesta a solicitud del apelado y el caso sometido por más de un año después de haber sido radicado el alegato del apelante ese memorándum jamás fué presentado.

Pueden ocurrir casos en los cuales la negativa a considerar una contrademanda equivaldría a una violación de los principios generales de práctica en equidad y a una negativa de la justicia substancial. Tal vez aún en el presente caso la corte pudo haber manifestado que consideraría primero y resolvería las cuestiones presentadas en la demanda y contestación como en un procedimiento para una orden de injunction temporal, posponiendo la vista y decisión de las cuestiones levantadas en la contrademanda para una fecha subsiguiente. En verdad que la apelante sugiere que una idea como ésta en la mente de la corte puede ser la explicación lógica de su actuación. Pero la apelante también insiste en que tal actuación sería contraria a todo precedente y de ningún modo consta claramente que el caso fuera juzgado a virtud de semejante teoría.

También puede ser que un adquirente del demandante

que posee a virtud de escritura con cláusula de saneamiento y evicción, en ciertas circunstancias tendría algunas ventajas que no tiene un demandado que deriva su título de alguna otra fuente, pero el apelante no establece tal distinción, ni en tanto se trata de una simple cuestión de colindancia encontramos ninguna base satisfactoria para tal criterio.

Si una posesión natural o un mero derecho en ley o equidad a la posesión puede constituir el fundamento de una contrademanda, entonces no podemos razonablemente decir que tales alegaciones no constituyen una defensa válida al alegarse en la contestación. Y el resolver así de nada valdría si el demandado por la simple idea de recurrir a una contrademanda puede convertir el procedimiento original en una controversia sobre los derechos posesorios últimos de las partes.

De adoptarse la teoría de la apelante en el presente caso se subvertiría la doctrina hasta ahora enunciada y sentada uniformemente por esta corte y resumida de nuevo en el reciente caso de *Cividanes* v. *Oben*, 34 D.P.R. *802.* Incidentalmente el establecer tal regla general, a menos que sea restringida dentro de límites más estrechos que los que ahora parecen ser lógicamente posibles, convertiría en letra muerta el precepto legislativo por el cual los interdictos de recobrar de la ley Romana fueron revividos y restablecidos en nuestros estatutos.

Apreciadas todas las circunstancias y especialmente la de que la demandada tuvo amplia oportunidad, si no para probar los hechos alegados en la contrademanda al menos para presentar la prueba en apoyo de la misma y obtener así una resolución definitiva en cuanto a su admisibilidad, a la luz de tales alegaciones, y que dejó de aprovechar debidamente tal oportunidad, nos vemos obligados a sostener que *la sentencia apelada debe ser confirmada.*